**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

CHRISTOPHER EZEH,

        Plaintiff,

v.

        REPORT AND
        RECOMMENDATION
        13-CV-6563

HON. ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS,

        Defendant.

## Preliminary Statement

Currently pending before the Court is pro se plaintiff's Motion to amend his complaint in order to join the Archdiocese for the Military Services and two of its employees as party-defendants in this case.[1] See Docket # 109. Since the filing of this motion, plaintiff has filed a Motion for Summary Judgment, currently pending before Judge Wolford. See Docket # 130.

## Background

Plaintiff Christopher Ezeh (hereinafter "Ezeh" or "plaintiff") was a Roman Catholic Chaplain and is a native of Nigeria. On March 2, 2011, Ezeh was hired on a part-time basis by the Veterans Administration Medical Center in Canandaigua, New York (hereinafter "Medical Center" or "VA") as a Roman Catholic Chaplain. See Complaint at 8 (Docket # 1). Ezeh's hours of work were variable and his compensation was dependent

---

[1] By Order of Judge Elizabeth A. Wolford, dated October 8, 2014, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 62).

on the hours that he worked. Id. In his complaint, Ezeh alleges a "series of harassment" and the "creation of an overwhelming hostile work environment, retaliation in different shapes and discriminatory treatments in different forms" from March through July, 2012. Id. at 9. Plaintiff was removed from his position on July 18, 2012. Id. at 10.

According to plaintiff's "Motion to Join," the Archdiocese for Military Services (hereinafter "AMS") is a non-governmental organization that is based in Washington, D.C. See Motion to Join at 2-3 (Docket # 109). Plaintiff was never employed by the AMS. See Amended Complaint ¶ 7-8 (Docket # 109-1). The AMS issues, updates and withdraws ecclesiastical endorsements, which are relied upon by the VA in their hiring processes.[2] Id. According to plaintiff, the AMS updated plaintiff's ecclesiastical endorsement on February 2, 2012, and set it to expire after one year. Id. at ¶ 11. The AMS withdrew plaintiff's endorsement on August 8, 2012, after his removal from the Medical Center but before the expiration date. Id. at ¶ 12.

Plaintiff alleges that his ecclesiastical endorsement was removed by Archbishop Broglio, "the head" of the AMS, and Bishop Higgins, the Vicar of the Veterans Affairs of the AMS, both of

---

[2] The endorsements are used by the VA to provide "ample safeguard that VA chaplains will be sufficiently trained to provide patients with those religious services the church, not the VA, finds necessary." Murphy v. Derwinski, 990 F.2d 540, 545 (10 Cir. 1993).

whom he seeks to join as parties to the current lawsuit. Id. at ¶¶ 13, 23. Plaintiff alleges that the men withdrew his endorsement as a favor to Bishop Matthew Clark, the former Bishop of the Diocese of Rochester. Id. at ¶ 13. Plaintiff states that as a result of his loss of ecclesiastical privileges he has suffered damages to his reputation, federal employment, diabetic health, priestly ministry, as well as the loss of health insurance. Motion to Join at 8, ¶ 7 (Docket # 109).

Defendant responds that Ezeh's motion to add defendants must fail on several grounds. First, defendant argues that plaintiff has failed to meet the standard for mandatory joinder under Fed. R. Civ. P. 19(a) because there is no showing that complete relief could not be afforded to plaintiff if his employment discrimination case carried on without the additional defendants. See Defendant's Opposition at 6 (Docket # 125). Defendant also contends that plaintiff has not shown that there would be any risk of double, multiple, or inconsistent obligations should two separate trials ensue on these independent matters. Id. Second, defendant argues that permitting the addition of new defendants pursuant to Fed. R. Civ. P. 20 is inappropriate because the claims against the proposed defendants lack common questions of law or fact with the existing claims and defendant. Id. at 7-11. Finally, the defendant argues that the motion must be denied because the

proposed amendments are futile. Id. at 10.

## Discussion

<u>Mandatory Joinder Under Fed. R. Civ. P. 19(a)(1)</u>: A party must be joined if the Court cannot accord complete relief among existing parties without the joinder; or if a party claims an interest related to the subject of the action and is so situated that disposing of the action in the party's absence may impair or impeded their ability to protect their interest, or leaves that party subject to risk of incurring double, multiple, or otherwise inconsistent obligations. See Fed. R. Civ. P. 19(a)(1)(A)-(B); <u>ConnTech Dev. Co. v. University of Connecticut Educ. Properties, Inc.</u>, 102 F.3d 677, 681 (2d Cir. 1996).

Plaintiff has not pled any facts indicating that joinder is mandatory, and the Court will not speculate whether such facts exist. Suffice it to say that the AMS has never been plaintiff's employer, and the alleged improper actions of the proposed new defendants occurred after plaintiff was terminated from the Medical Center. Plaintiff fails to make any showing that he would be unable to seek full relief from the current defendant, or how the proposed defendants might be subject to double, multiple, or inconsistent obligations resulting from two separate trials. Plaintiff is not entitled to mandatory joinder of these three defendants.

4

Permissive Joinder Under Fed. R. Civ. P. 20: Rule 20 provides for permissive joinder of defendants if the asserted claims for relief against the various parties are "in respect of or arising out of the same transaction, occurrence, or series of transactions and occurrences and if any question of law or fact common to all defendants will arise in the action." Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1095 (2d Cir. 1992); (citing Fed. R. Civ. P. 20(a)(2)). Both of these elements are required for a proper joinder. Kalie v. Bank of America Corp., 297 F.R.D. 552, 556 (S.D.N.Y. Aug. 9, 2013). In determining whether a claim or party qualifies for permissive joinder, courts in this circuit have looked to see whether "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." See Id. (analyzing "same transaction or occurrence" to assess misjoinder)(citing U.S. v. Aguavella, 615 F.2d 12, 22 (2d Cir. 1979), which applies this standard to the "transaction or occurrence" requirement of Rule 13(a) compulsory counterclaim).

Here, there does not seem to be a logical connection between the existing claims against the VA and the new claims asserted against the AMS, Archbishop Broglio and Bishop Higgins. The allegations contained in plaintiff's proposed amended complaint involve the removal of his ecclesiastical endorsement

by the AMS, which plaintiff asserts occurred on or around August 8, 2012. This date is more than a month after plaintiff was terminated from the VA. Ezeh does not allege that the VA or any of its employees had anything to do with the endorsement being removed. In fact, plaintiff does not assert employment discrimination as the reason why he lost his endorsement. Rather, plaintiff claims the removal decision was motivated by Higgins and Broglio's desire to do a "favor to their friend and colleague" Bishop Matthew Clark who was about to retire as Bishop of the Diocese of Rochester. See Proposed Amended Complaint at ¶¶ 14, 34, 83. Further, plaintiff concedes that the AMS is an organization that is not part of or connected to the VA, and that he was never employed by the AMS. Other than Ezeh's repetitive assertions that he was wronged by both the VA and Higgins and Broglio, there is nothing legal or substantive to link the proposed AMS defendants to Ezeh's employment discrimination case against the VA. In the Court's view, plaintiff's Title VII discrimination claims are not sufficiently related to the loss of his ecclesiastical endorsement claims to be part of the same transaction or occurrence under Rule 20.

Futility: Although Rule 20 regulates whether parties may be joined, a motion to join parties implicitly seeks to amend the complaint to add new parties, such that the requirements of Fed. R. Civ. P. 15(a) must also be met. Bowers v. SMC Corp.,

6

No. 07-CV-0748A(F), 2008 WL 1700447, at *3-4 (W.D.N.Y. April 9, 2008). Notwithstanding the generally liberal standards for amending a complaint, the Court may properly deny a motion to amend if the amendment would be futile. Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003) ("[L]eave to amend a complaint need not be granted when amendment would be futile."); Lucente v. Int'l Mchs. Bus. Corp., 310 F.3d 243, 258 (2d Cir. 2002)("One appropriate basis for denying leave to amend is that the proposed amendment is futile.") An amendment is futile if the proposed pleading would not withstand a motion to dismiss. See Jones v. Phelps Corp., No. 3:14-CV-84, 2014 WL 2195944, at *3 (N.D.N.Y. May 23, 2014); Bowers v. SMC Corp., 2008 WL 1700447 at *4. The proposed amended claim must contain "more than labels and conclusions." Barnhart v. Town of Parma, 252 F.R.D. 156, 158 (W.D.N.Y. Sept. 15, 2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). It must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest such a conclusion. Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 557)).

Even assuming *arguendo* that plaintiff's loss of ecclesiastical endorsement was somehow part of the same transaction or occurrence alleged in his original complaint, I

7

find that the joinder would be futile because plaintiff's amended complaint does not state a claim upon which relief could be granted as to any of the three proposed defendants.

In his proposed amendment, plaintiff seeks to join AMS, Bishop Higgins and Arch Bishop Broglio as defendants in his existing lawsuit that alleges religious, racial and national origin discrimination under Title VII. Complaint (Docket # 1) at ¶ 14. As Judge Wolford explained in her September 29, 2014 Decision and Order, (Docket # 58), dismissing plaintiff's former lawyer William Burkhart from this action:

> As a threshold matter, <u>there is no individual liability under Title VII.</u> See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010). Moreover, "Title VII is the exclusive remedy for a federal employee suing for employment discrimination "based on race, religion, or national origin and "only the 'head of the department, agency, or unit, as appropriate, shall be the defendant' in a Title VII action by a federal employee." Mitchell v. Chao, 358 F. Supp. 2d 106, 111-12 (N.D.N.Y. 2005) (quoting 42 U.S.C. § 2000e-16(c)). Mr. Burkhart is not the head of the department, agency, or unit that employed Plaintiff and is not an appropriate Title VII defendant. Additionally, <u>Title VII applies only to discriminatory practices by an employer</u> and Plaintiff does not allege that Mr. Burkhart has ever been Plaintiff's employer. See Heller v. Consol. Rail Corp., 331 F. App'x 766, 768 (2d Cir. 2009). For all these reasons, Plaintiff cannot state a Title VII claim against Mr. Burkhart.

Ezeh v. VA Medical Center, Canandaigua, NY, No. 13-CV-06563 EAW, 2014 WL 4897905, at *7 (W.D.N.Y. Sept. 29, 2014) (emphasis added).

These legal principles apply with equal force here. Plaintiff may not sue individual defendants under Title VII. Thus, his motion to join Bishop Higgins and Archbishop Broglio as party-defendants in this action is futile. Ezeh also states clearly that the AMS was never his employer. See Motion to Join at 2 (Docket # 109). Hence, the AMS is not a proper party to this Title VII lawsuit. See Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 370 (2d Cir. 2006) ("It is well established that "the existence of an employer-employee relationship is a primary element of Title VII claims."). Moreover, that the AMS functions as a credentialing source for VA chaplains does not transform them into an employer for Title VII purposes. See Id. at 378 (applying the Reid test from agency law to define employer-employee relationship for Title VII liability); see also Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989). At all relevant times Ezeh was employed by the VA and the VA is the only proper defendant in this action.

## Conclusion

For the reasons set forth above, it is the Report and Recommendation[3] that plaintiff's motion to join the Archdiocese

---

[3] Because my findings and conclusions regarding the futility of plaintiff's motion operate as a dispositive determination that AMS, Archbishop Broglio and Bishop Higgins may not be joined as defendants in this case, my determinations are made as part of a Report and Recommendation and not a Decision and Order. See Gomez v. Lempke, No. 09-CV-86A, 2010 WL 3834643 (W.D.N.Y. Sept. 29, 2010) (adopting Report and Recommendation to deny petitioner's Motion to Amend); Pusey v. Delta Airlines, Inc., No. 09-CV-4084 (ENV)(JO), 2011 WL 1215081 (E.D.N.Y. March 20, 2011) ("A magistrate judge's

9

for the Military Services, Archbishop Broglio and Bishop Higgins as defendants in this action be denied.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 14, 2016
Rochester, New York

---

denial of leave to amend, when premised on futility, is a dispositive decision warranting de novo review of any objection to it."); HCC, Inc. v. RH&M Mach. Co., 39 F.Supp.2d 317, 321-22 (S.D.N.Y. Jan. 19 1999) ("This Court is of the view that denial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility."); see generally, 28 U.S.C. § 636(b)(1)(B). Plaintiff is advised to read carefully the supplemental order attached to this Report and Recommendation and comply with all time limits set forth therein regarding the procedures for filing objections to this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." <u>**Failure to comply with the provisions of Local Rule 72(b) (concerning review of and objections to a Magistrate Judge's findings of fact and recommendations), may result in the District Court's refusal to consider the objection.**</u>

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the Plaintiff and the attorneys for the Defendant.

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: March 14, 2016
Rochester, New York